UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| CONNIE DOWNEY, *individually and as administratrix*, )<br>)<br>) | |
| Plaintiff, )<br>) | Civil Action No. 6:18-CV-322-CHB |
| v. )<br>) | **MEMORANDUM OPINION AND ORDER** |
| ROOF BOLT TRANSPORT, INC., et al, )<br>) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Connie Downey's Motion for Summary Judgment in which she argues that the doctrine of res ipsa loquitur entitles her to judgment as a matter of law. [R. 108; R. 109][1] Defendants Roof Bolt Transport, Inc. and Robert W. Glass responded in opposition, arguing that Plaintiff has failed to demonstrate the doctrine of res ipsa loquitur applies and that material issues of fact exist concerning what caused the accident in this case. [R. 114]. For the following reasons, the Court will deny Plaintiff's Motion for Summary Judgment.

**I.   Background**

On September 20, 2018, Defendant Robert Glass was driving northbound on Interstate 75 in a 2015 Volvo semi-truck owned by his employer, Defendant Roof Bolt Transport, Inc. (Roof Bolt). [R. 114, pp. 3–4] Around 8:30 p.m., as he was traveling through Fayette County, the truck's left front wheel assembly suddenly detached, crossed the median, and hit a van traveling

---

[1] As a supplement to her Motion, Plaintiff also filed additional materials into the record, all of which the Court has reviewed and taken into consideration. [R. 109]

southbound on I-75. *Id.* at 4. Subsequent investigation found that the entire left front wheel assembly—wheel, tire, rim, and hub—separated from the axle connected to the semi and struck the oncoming van. [R. 108, p. 2; R. 114, p. 4; R. 114-6, p. 3] Tragically, the driver of the van, Raleigh Downey, died on impact. [R. 108, p. 2; R. 114, p. 4] Plaintiff is Mr. Downey's wife. She brought this action in her individual capacity and as administrator of her husband's estate against Glass (the truck driver) and Roof Bolt (the owner of the truck) under a theory of negligence. [R. 1-3, pp. 3–7 (Complaint)]

Some explanation of how wheel assemblies work is necessary. The assembly includes the vehicle's tire, wheel, rim and hub. [R. 114-6, p. 3] Wheel assemblies are attached to the rest of the semi by "wheel hubs." *Id.* The truck in this case used a certain type of wheel hub called a "preset hub," which is a common type of hub that requires less maintenance than traditional hubs. *Id.* at 4–5. Preset hubs work by encasing the parts of the hub (i.e., nuts, washers, and wheel bearings) inside of a metal sleeve. *Id.* at 4. As a result, the parts of the hub are not visible under the sleeve, unless the hub is taken apart. [R. 114, p. 3] On preset hubs, removing the sleeve and inspecting the components inside the sleeve is not required "unless an abnormal condition is detected." [R. 114-6, p. 15]

The wheel assembly on this semi was manufactured by Conmet, a trucking parts manufacturer, and installed by Volvo Trucks of North America. *Id.* at 4–5. This type of hub connects the wheel assembly to the axle through a five-piece locking mechanism, which consists of two washers and two nuts, attached to a D-shaped spindle. [*Id.*, p. 4; R. 114-7, pp. 7–8] After the incident, the Lexington Police found only one washer attached to the spindle, with one nut lying on the road. [R. 114-6, pp. 8–9] The attached washer was now circular-shaped, meaning that it no longer fit snugly with the D-shaped spindle. *Id.* at 9.

Roof Bolt bought the semi new in 2015; its employees were responsible for maintenance. Thomas Via, the CEO and 50% owner of Roof Bolt,[2] supervised the maintenance, and Don Vojvodich served as the chief mechanic. [R. 108, p. 4; R. 114, pp. 6–7] Thomas Via has over 40 years of experience maintaining trucks, but he does not handle the newer models (like the 2015 semi here). [R. 108-5, p. 15] Roof Bolt also employed two other mechanics and a shop hand. [R. 108-6, p. 31; R. 108-8, p. 5] Roof Bolt does not keep written policies on its maintenance program. [R. 108-5, p. 22; R. 108-8, p. 6] It also lacks any formal training program for its mechanics. [R. 108-5, pp. 22–24] It uses the procedures outlined in the Green Book from the Federal Motor Carrier Safety Administration, which contains federal safety regulations. [R. 108-5, pp. 22–23] Still, Roof Bolt performs inspections every week, with a set program of inspection that does not vary by type or make of truck. [R. 108-8, p. 6] Thomas Via oversees and directs these inspections. [R. 108-5, pp. 14–15]. Roof Bolt also performs "preventative maintenance" when required by the manufacturer [R. 108, p. 8; R. 114, pp. 7–8], and drivers perform a safety check before each trip. [R. 108-7, p. 30]

This semi had just over 500,000 miles at the time of the incident. [R. 108, p. 3] Twelve days earlier, it had undergone preventative maintenance, which is required by Volvo at the 500,000-mile mark. [*Id.* at 8; R. 114, p. 11] The preventative maintenance was performed by a shop hand and did not document any issues with the left front wheel.[3] [R. 108-8, p. 18; R. 114, p. 7] The semi had also undergone several repairs before this preventative maintenance, but none required the left preset hub to be taken apart for inspection. [R. 114, p. 7] Accordingly, the preset hub was never taken apart. [R. 114-7, p. 9] On the day of the wheel separation, Defendant Glass

---

[2] Thomas's son, Justin Via, owns the other 50% of Roof Bolt, but he is not involved in maintenance operations. [R. 108-6, p. 19]
[3] The Court will refer to the entire wheel assembly that flew off as the "wheel" for ease of reference.

performed a pre-trip inspection, which involved checking the fluid level and looking for oil leaks. [R. 108-7, pp. 32–34; R. 114, p. 5] The inspection lasted seven minutes, which did not involve taking apart the wheel, and no issues were documented. [R. 114, p. 7; R. 108-7, p. 32]

The parties' experts pointed to different causes for the crash. Plaintiff's expert Gregory Wright, a former mechanic and current forensic consultant, concluded that Roof Bolt failed to adequately inspect and maintain the semi, and that lack of maintenance caused the wheel to separate. [R. 99-3] Mr. Wright viewed the driver's daily inspections as inadequate, since Defendant Glass (the driver) did not conduct post-trip inspections and pre-trip inspections would last only seven minutes. *Id.* at 3, 5.

Defendants provided two experts. Defendants' first expert Carl Sandler, a car crash investigator and crash reconstruction expert, examined Roof Bolt's maintenance of the preset hub and found that Defendants had no cause to take apart and inspect the hub. [R. 114-6] Specifically, Mr. Sandler maintained that driver inspections would not have stopped the detachment, since proper maintenance of the preset hub did not require taking apart the preset hub unless problems arose—and no problems with the wheel had been documented. *Id.* at 15. Sandler further noted that Roof Bolt's inspection and maintenance procedures detected issues with the right front wheel and hub cap, and appropriate repairs were performed. *Id.* at 11, 15. From this appropriate repair job, Mr. Sandler concluded that Roof Bolt's mechanics were well qualified to do work on this semi. *Id.* at 15.

Defendants' second expert Tim Jur, Ph.D., P.E., a doctor in mechanical engineering, examined the hub's locking components after the crash and found that the separation was due to a missing nut and washer, which had been caused by faulty manufacture. [R. 114-7] Dr. Jur concluded it was "obvious" that the lock washer and outer nut "were never installed" at the

factory. *Id.* at 16. Accordingly, for Dr. Jur, the wheel separation "was the result of the condition of manufacturing defect . . . attributable to the manufacturer of the truck tractor, a product of Volvo Trucks North America." *Id.* at 17. Dr. Jur also concluded that the wheel separation may have happened quickly—that is, neither driver nor mechanic could have known that separation was imminent. *Id.* at 19–21.

## II. Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e). A fact is "material" if the underlying substantive law identifies the fact as critical. *Liberty Lobby*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue

exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III.   Discussion

When things like tires take flight on the highway, it is correct to assume that something has gone wrong. In the law, an inference (or even presumption) may be made that the event "speaks for itself" under the doctrine of "res ipsa loquitur"—that is, the blame for any resulting harm can be imputed to the person or entity that had control of the object before it caused the harm. Plaintiff asks the Court to adopt this legal concept here and find that Defendants are liable for the death of her husband when the entire wheel assembly from Roof Bolt's truck broke loose, went airborne, and struck the vehicle he was driving. But Plaintiff has failed to demonstrate that res ipsa loquitur applies, and Defendants have presented evidence sufficient to raise material issues of fact concerning whether a manufacturing defect (rather than Defendants' negligence) caused the wheel assembly to detach, fatally injuring Plaintiff's husband.

Res ipsa loquitur ("the thing speaks for itself") is a doctrine for determining fault via circumstantial evidence, so that "the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." *Res Ipsa Loquitur*, Black's Law Dictionary (11th ed. 2019). Stated another way, the doctrine of res ipsa loquitur "simply recognizes that as a matter of common knowledge and experience [,] the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing injury." *Banes v. Otis Elevator Co.*, 2 F. App'x 461, 467 (6th Cir. 2001) (alteration in original) (*quoting Bell & Koch, Inc. v. Stanley*, 375 S.W.2d 696, 697 (Ky. 1964)).

Under Kentucky law, three requirements are needed to invoke the doctrine of res ipsa loquitur: "(1) the defendant had full control of the instrumentality which caused the injury; (2)

the accident could not have happened if those having control had not been negligent; and (3) the plaintiff's injury resulted from the accident." *Sadr v. Hager Beauty Sch., Inc.*, 723 S.W.2d 886, 887 (Ky. Ct. App. 1987); *accord Bowers v. Schenley Distillers, Inc.*, 469 S.W.2d 565, 568 (Ky. 1971). Res ipsa loquitur fails "where the existence of negligent acts is not more reasonably probable and where the proof occurrence, without more, leaves the matter resting only on conjecture." *Banes,* 2 F. App'x at 467 (*quoting Helton v. Forest Park Baptist Church*, 589 S.W.2d 217, 219 (Ky. Ct. App. 1979)). "The doctrine of *res ipsa loquitur* 'is only to be applied when the nature of the accident itself not only clearly supports the inference of negligence but excludes all others[.]'" *Gibson v. Sanofi-Aventis U.S., LLC*, 3:07-cv-192-CRS, 2009 WL 3490454, at *5 (W.D. Ky. Oct. 27, 2009) (*quoting Frank Fehr Brewing Co. v. Corley*, 96 S.W.2d 860 (Ky. 1936)).

Plaintiff has not pointed to any precedent establishing res ipsa as a basis for summary judgment, nor has the Court found any. [*See* R. 108, pp. 9–10] As an evidentiary rule, res ipsa can suffice for a directed verdict, but only in rare cases when the evidence is especially strong. *Sadr*, 723 S.W.2d at 887 ("[Res ipsa] is an evidentiary doctrine which allows a jury to infer negligence on the part of the defendant. If the inference is forceful enough it can create a rebuttable presumption of negligence, possibly resulting in a directed verdict."). This may suggest that res ipsa loquitur could create a strong enough presumption of negligence for a court to grant summary judgment, given the similarities between summary judgment and directed verdicts. *See Liberty Lobby*, 477 U.S. at 251 ("[S]ummary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'" (quoting *Sartor v. Ark. Gas Corp.*, 321 U.S. 620, 624 (1944)); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2713.1 (4th ed. 2020) ("Both motions also call upon the court

7

to make basically the same determination—that there is no genuine dispute of material fact and that the moving party is entitled to prevail as a matter of law.").

But even assuming that res ipsa permits a finding of summary judgment, Plaintiff here fails in her burden of showing she is entitled to judgment as a matter of law under a theory of res ipsa loquitur. Res ipsa loquitur applies only when the indication of negligence is especially clear and where other possible causes are excluded. *See Sadr*, 723 S.W.2d at 887; *Gibson*, 2009 WL 3490454, at *5; *Frank Fehr Brewing*, 96 S.W.2d at 864–65. The indication of negligence here is not clear; instead, Defendants have offered evidence outside of their own negligence for why the wheel assembly detached from the semi. Namely, there is no "clear inference" of Defendants' negligence because a reasonable jury might well find that the accident happened due to a manufacturing defect rather than any actions attributable to Defendants. [R. 114-7, pp. 12, 16]

For res ipsa to apply, Plaintiff must demonstrate all three requirements. The Court assumes for purposes of this analysis that Defendants were in complete control of the wheel assembly at the time of the accident, meeting the first requirement. Plaintiff can also meet the third element. *See Sadr*, 723 S.W.2d at 887. Mr. Downey's fatal injury unquestionably resulted from the wheel detachment. [R. 108, p. 2; R. 114, p. 4] Plaintiff falls short, however, on the second element, where she must show that "the accident could not have happened if [Roof Bolt and Glass] had not been negligent." *Sadr*, 723 S.W.2d at 887. Defendants have presented evidence that a reasonable jury might accept demonstrating that the accident happened not because of their own negligence but rather because of a manufacturing defect that occurred when the wheel was originally assembled without a necessary nut and washer. [R. 114-6, p. 15; R. 114-7, pp. 16–17, 19–21]

Defendants have presented evidence that raises genuine issues of fact concerning what actually caused the wheel assembly to dislodge. Roof Bolt's CEO and chief mechanic testified in depositions concerning their protocols for inspection and maintenance, and Defendants' expert, Carl Sandler, concluded that their maintenance work showed proficient levels of expertise. [R. 108-5; R. 108-8; 114-6, p. 15] Mr. Sandler also opined that the industry standard does not require removing the hub sleeve unless there was an indication of a problem. [R. 114-6, p. 15] Defendant Glass testified that he performed pre-trip inspections and never found any indication of problems with the left wheel. [R. 108-7, pp. 30–32] Defendants' other exert, Dr. Tim Jur, concluded that the wheel assembly dislodged due to a manufacturing defect (a missing nut and washer) that were never installed, prior to Roof Bolt's purchase of the truck. [R. 114-7, pp. 17–18] Dr. Jur further opined that this defect would have been undetectable unless the sleeve had been removed. *Id.* Dr. Jur also concluded that it was likely that the wheel dislodged with little warning that it was coming loose. *Id.* at 20–21.

This evidence demonstrates that res ipsa loquitur "simply does not apply here, as other possible causes of the accident clearly exist." *Gibson*, 2009 WL 3490454, at *5. Stated another way, the evidence here points to more than one possible cause of the accident: Roof Bolt's expert evidence raises disputed issues of fact concerning how the wheel separation could have happened without negligence on the part of Roof Bolt or Glass—namely, by the absence of locking pieces in the preset hub from manufacture. [R. 114-6, p. 15; R. 114-7, pp. 12, 16] A reasonable jury might credit this evidence and side with Defendants, or it might find in favor of Plaintiff.

Res ipsa requires Plaintiff to show that Defendants' negligence in their maintenance routines *caused* the injury. *Sadr*, 723 S.W.2d at 887. But Plaintiffs do not show how more

frequent maintenance would have led Defendants to discover problems with the wheel. Defendants posit that more frequent maintenance would not have mattered, and Plaintiffs do not rebut that assertion. [R. 114-7, p. 21] Defendants presented evidence that industry standards did not require checking inside of the preset hub, and such evidence is sufficient to preclude granting summary judgment to Plaintiff.

Plaintiff's citation to *McDougald v. Perry*, 716 So. 2d 783 (Fla. 1998) is unhelpful, since in *McDougald*, Defendant presented no evidence pointing to a third-party explanation for the wheel detaching. *Id.* at 786. *Holten v. Parker*, 224 N.W.2d 139 (Minn. 1974) is similarly inapposite. *Holten* noted that "in accidents where a wheel becomes disengaged from a moving vehicle the doctrine of res ipsa loquitur is applicable *except where defendant offers evidence establishing that he is not solely responsible for any negligence connected with the loss of the wheel*." *Id.* at 144 (emphasis added). The defendant in *Holten* presented no such evidence, so res ipsa loquitur applied. *Id.* at 145. That is not the case here. There is no clear inference here (much less presumption) that the fatality would not have happened absent the Defendants' negligence. A finder of fact might as easily determine, based on the expert and other evidence, that the wheel assembly detached because "key components—the lock washer and the outer of the two torque-tightened nuts—were never installed" by the manufacturer, Volvo Trucks of North America. [R. 114-7, pp. 16–17]

Simply put, Plaintiff cannot demonstrate she is entitled to judgment as a matter of law under a theory of res ipsa loquitur because there exist material issues of fact rebutting Plaintiff's claim that Defendants were negligent. Defendants have raised triable issues of fact that a manufacturing defect is the real and legitimate cause of injury in this case. Accordingly, summary judgment is not appropriate.

For the reasons stated in this Order, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [**R. 108**] is **DENIED**.

This the 22nd day of January, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY